IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIE L. BOWMAN, | § | |
| | § | No. 427, 2025 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N23C-04-059 |
| ROBERTO DURAN-MADRIGAL & | § | |
| EVERGREEN WASTE | § | |
| SERVICES, LLC | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: June 10, 2026
Decided: July 21, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

## <u>ORDER</u>

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Willie Bowman appeals from a $95,000 jury verdict in his favor following a three-day trial of his personal injury action arising from a motor vehicle collision. Bowman challenges two of the Superior Court's evidentiary rulings: first, an order granting Defendants' motion *in limine* to exclude Bowman's lost-wage claim and his economist's testimony; and second, an order denying Bowman's motion *in limine* to exclude evidence under Delaware Rule of Evidence 609(b) of

his 2013 convictions for crimes of dishonesty. Bowman has not shown that the Superior Court abused its discretion as to either ruling. We therefore affirm the Superior Court's judgment.

(2)   On May 7, 2021, Bowman was operating a pickup truck along Philadelphia Pike in New Castle County. At the same time, Roberto Duran-Madrigal, in the course of his employment with Evergreen Waste Services, LLC, was driving along Clearview Avenue. Duran-Madrigal failed to stop at a stop sign, and the vehicles collided. Bowman alleged that he sustained personal injuries as a result of the collision and sought past and future lost wages.

(3)   Bowman's forensic economist, Dr. Lawrence Spizman, opined that Bowman had incurred approximately $3.35 million to $4.66 million in lost income from his business, Bowman Concrete.[1] Despite repeated discovery requests and a court order compelling production, Bowman produced limited records to corroborate his earnings: an IRS Account Transcript for 2019; a self-prepared, unsigned 2020 federal return generated through FreeTaxUSA.com; an IRS Account Transcript for 2020; an unsigned, unfiled 2021 federal return prepared by Lucia Garibay of Journey Tax based solely on figures that Bowman supplied for what he told Garibay were "legal" reasons;[2] and IRS Account Transcripts confirming that no returns were filed

---

[1] App. to Appellant's Opening Br. at A91 (Dr. Spizman Report).

[2] App. to Appellee's Answering Br. at B157 (Garibay Dep.).

for 2017, 2018, or 2021. Bowman did not produce monthly bank statements, financial statements, invoices, payroll records, W-2s, W-3s, 1099s, or credit-card statements—despite testifying that he kept business records in a safe at his residence.

(4)    Defendants' forensic economist, James Stavros, stated that Bowman's production was unreliable and insufficient to support a calculation of pre-injury earning capacity. Stavros identified specific defects:  gross receipts and expenses reported in round numbers; reported material costs of only 8% (2019) and 4.6% (2020) of more than $700,000 in alleged gross receipts; and reported labor costs of $93,300 (2019) and $75,000 (2020) that could not plausibly support fifteen employees.[3]  The unfiled 2021 return reflected no business income for the year of the accident.  Defendants also obtained surveillance video from August 2024 depicting Bowman, in a Bowman Concrete work shirt, removing concrete-finishing tools from his pickup truck at a residence under construction.  Bowman testified at trial that he was training other workers, not working himself.[4]

(5)    In his first claim on appeal, Bowman argues that the Superior Court abused its discretion by excluding his lost-wage claim as speculative.  We review the Superior Court's decision to admit or exclude evidence for abuse of discretion.[5]

---

[3] App. to Appellant's Opening Br. at A106–07 (Stavros Report).

[4] *Id*. at A406–08 (Trial Tr. Oct. 6, 2025).

[5] *Miller v. State Farm Mut. Auto. Ins. Co.*, 993 A.2d 1049, 1052–53 (Del. 2010).

Bowman argues that he produced sufficient evidence—IRS account transcripts, federal tax returns for 2019 and 2020, and Dr. Spizman's expert calculations—to permit a jury to estimate his loss,[6] and that any deficiencies in that evidence were questions of credibility to be weighed by the jury.[7]

(6) To recover lost wages, a plaintiff must establish a prima facie basis for recovery. The plaintiff bears the burden of providing evidence offering "some reasonable basis upon which a jury may estimate with a fair degree of certainty the probable loss which the plaintiff will sustain in order to enable it to make an intelligent determination of the extent of the loss."[8] Although such damages "need not be demonstrated with scientific precision," they "cannot be speculatively estimated."[9]

(7) Our decision in *Drozdov v. Webster* squarely addressed "the admissibility of an expert's economic projection of future lost wages."[10] There, the plaintiff sued for personal injuries arising from an automobile accident and sought to recover, as part of her damages, future lost wages from a part-time job. The

---

[6] Appellant's Opening Br. at 11.

[7] *Id*. at 12.

[8] *Moody v. Nationwide Mut. Ins. Co.*, 549 A.2d 291, 293 (Del. 1988) (quoting *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958)).

[9] *McMoore v. Lawrence*, 2021 WL 5834381, at *6 (Del. Com. Pl. Dec. 9, 2021); *see also LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007).

[10] *Drozdov v. Webster*, 345 A.2d 895, 895 (Del. 1975).

evidence that she offered to support that claim was thin: her pre-accident work history showed only sporadic days or weeks of part-time employment, with maximum one-year earnings of $800.[11] On that factual foundation, her economist projected first-year future losses of $2,208.75—more than two and a half times her highest annual earnings. We reversed, holding that "[t]here must be some reasonable basis in fact upon which a jury may estimate with a fair degree of certainty the probable loss a plaintiff will sustain."[12] We found "no basis in the record for allowing the economist's projection" because such sporadic part-time earnings could not, on their own, establish with "reasonable probability" the nature and extent of the plaintiff's future lost earnings over a lifetime.[13]

(8) *Drozdov* establishes that, where a plaintiff's claim for future lost wages depends on an economist's projection, the projection itself must rest on a reasonable basis in fact. A court need not admit such a projection, even when produced by an expert, if the projection's assumptions cannot be tied to a reliable evidentiary foundation.

(9) Applying the *Drozdov* standard, we conclude that the Superior Court did not abuse its discretion in granting Defendants' motion *in limine* because it was

---

[11] *Id.* at 896.

[12] *Id.*

[13] *Id.*

reasonable to find that Dr. Spizman's projection of future lost wages lacked a reasonable basis in fact. Despite a court order compelling production, Bowman produced no monthly bank or financial statements, no invoices, no payroll records, no W-2s, W-3s, or 1099s, and no records contemporaneous with Bowman Concrete's operations—even though Bowman testified at his deposition that he kept these business records in a safe at his residence.[14] The evidence that Bowman did produce bore specific markers of unreliability: gross receipts and expenses reported in round numbers; reported material costs that were minimal in comparison to the business's claimed receipts; and reported labor costs that could not plausibly support the number of employees that Bowman claimed worked at the company at the time of the collision.[15] The unfiled 2021 return reflected no business income for the year of the accident, and was prepared, not from typical financial data, but solely from figures that Bowman had supplied for what he told his tax accountant were "legal" reasons.[16] Considering that Dr. Spizman's projection of multi-million-dollar future losses rested solely on this factual foundation, the Superior Court acted within its

---

[14] App. to Appellant's Opening Br. at A21 (Bowman Dep.).

[15] *Id*. at A106–08 (Stavros Report).

[16] App. to Appellee's Answering Br. at B157 (Garibay Dep.).

discretion in concluding that this record provided no reasonable basis in fact for a jury to estimate Bowman's future lost earnings with a fair degree of certainty.[17]

(10) In his second claim on appeal, Bowman argues that the Superior Court abused its discretion when it denied his motion *in limine* and admitted evidence of his 2013 Pennsylvania convictions for forgery and theft by unlawful taking.[18] Those convictions arose from a fraudulent real estate scheme involving three adjoining parcels in Chester, Pennsylvania, that had been titled solely in the name of Bowman's brother. Bowman's brother died in November 2011. Bowman admitted that, approximately nine months after his brother's death, he took the deeds to the three properties, signed his brother's name as the grantor, signed his own name as the grantee, had them notarized, and recorded each with the Delaware County, Pennsylvania Recorder of Deeds. Each deed bore a notary acknowledgment certifying that Bowman's brother had personally appeared before the notary on the date of transfer—nine months after his death. A jury convicted Bowman of three

---

[17] Bowman argues that *Moody* is a better analogue than *Drozdov*. Appellant's Opening Br. at 9–10. We disagree. The plaintiff in *Moody* sought past lost wages for the eighteen months that he was disabled after the accident. For that claim, he offered primary evidence of historical operations: his own testimony, a contemporaneous notebook record of past receipts, and an existing business that Nationwide's claims adjuster had visited and verified. *Moody*, 549 A.2d at 292. *Moody* held that it is for the jury to assess the credibility of somewhat suspect primary historical evidence. *Id.* at 294. *Moody* did not consider whether the same rule applies when a plaintiff's claim depends on an economist's derivative projection of future lost wages built on disputed tax records. For that question, *Drozdov* is a better analogue.

[18] Appellant's Opening Br. at 13.

7

counts of forgery and one count of theft by unlawful taking. The Pennsylvania Superior Court affirmed Bowman's convictions on September 19, 2014.[19]

(11) Delaware Rule of Evidence 609(a) generally permits impeachment with evidence of a witness's prior felony conviction or crime of dishonesty.[20] Rule 609(b) adds a temporal limit: when more than ten years have elapsed since the witness's conviction or release from confinement, evidence of the conviction is not admissible unless the court determines that "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."[21] Bowman contends that his convictions are more than ten years old and that, under D.R.E. 609(b), their probative value could not substantially outweigh their prejudicial effect in a motor-vehicle case in which the underlying claim had nothing to do with crimes of dishonesty.[22]

(12) The Superior Court applied Rule 609(b) within the bounds of its discretion. The court acknowledged on the record that the convictions were "over the ten-year period of time" and applied the Rule 609(b) balancing test.[23] The court identified the specific facts and circumstances supporting the conviction's probative

---

[19] App. to Appellee's Answering Br. at B137–46 (Pa. Super. Ct. Op. on Appeal).

[20] D.R.E. 609(a).

[21] D.R.E. 609(b).

[22] Appellant's Opening Br. at 16–17.

[23] App. to Appellant's Opening Br. at A283 (Trial Tr. Oct. 6, 2025).

value, including that Defendants' neuropsychologist, Dr. Langan, had opined that the results of Bowman's cognitive tests strongly suggested that he was deliberately choosing wrong answers.[24] As the court explained, "Mr. Bowman's credibility is at issue here," and Bowman's prior convictions for crimes of dishonesty—forging deeds and notary acknowledgments for personal pecuniary gain—were directly probative of whether he had similarly falsified his answers on a test designed to measure his accident-related injuries.[25] The court conducted the balancing the rule requires, finding that "[o]bviously there's some prejudice to this" but that "the probative value outweighs the prejudice."[26] In addition, the court tailored the use of the evidence to mitigate prejudice; the jury would hear only "a general conviction of a crime of dishonesty" in Pennsylvania and not the specific charges, the number of counts, or the underlying facts.[27] The court also reserved the option to give a

---

[24] App. to Appellee's Answering Br. at B170–78 (Dr. Langan Report). Defendants retained Dr. James Langan to conduct a neuropsychological examination of Bowman in light of his claimed traumatic brain injury. Dr. Langan administered a battery of validity tests routinely given to patients with Alzheimer's disease and dementia, who typically score much higher than Bowman did. On one such test, Bowman answered only two of the twenty-four questions correctly. Dr. Langan opined that the result was so improbable that Bowman would have had to know the correct answers and deliberately select wrong ones to achieve it. App. to Appellee's Answering Br. at B206–08 (Dr. Langan Report); App. to Appellant's Opening Br. at A281–82 (Trial Tr. Oct. 6, 2025) (court summarizing Dr. Langan's findings).

[25] App. to Appellant's Opening Br. at A282 (Trial Tr. Oct. 6, 2025).

[26] *Id.*

[27] *Id*. at A284 (Trial Tr. Oct. 6, 2025).

credibility-only limiting instruction at Bowman's request.[28]  Bowman has identified

no error in the Superior Court's D.R.E. 609(b) analysis.[29]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[28] *Id.* at A285 (Trial Tr. Oct. 6, 2025).

[29] Bowman argues that our decision in *Wilson v. Sico* requires a different result.  Appellant's Opening Br. at 15.  Not so.  *Wilson* requires that, when a Rule 609(b) conviction is admitted, its application must be properly limited under D.R.E. 105 to its probative purpose.  *Wilson v. Sico*, 713 A.2d 923, 924–25 (Del. 1998).  The Superior Court did exactly that here, restricting the evidence to a single, generic reference and offering a limiting instruction.